**Sergey Joseph Litvak, Esquire**          **ATTORNEY FOR PLAINTIFF**
**NJ Identification No. 112642017**
**LITVAK LEGAL GROUP, PLLC.**
**3070 Bristol Pike, Ste. 1-204,**
**Bensalem, PA 19020**
**Ph.  (215) 515.7113**
**Fax (267) 543.5706**
**JLitvak@litvaklegalgroup.com**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JANE DOE** | |
| **Plaintiff,** | |
| | **CIVIL ACTION** |
| **v.** | **CASE NO. 19-20674** |
| **THE COLLEGE OF NEW JERSEY** | **COMPLAINT WITH JURY DEMAND** |
| **2000 PENNINGTON RD.** | |
| **EWING TOWNSHIP, NJ 08618** | |
| **Defendant(s)** | |

## COMPLAINT DAMAGES AND DEMAND FOR TRIAL BY JURY

Plaintiff, Jane Doe (hereinafter "Plaintiff"), by and through her attorney, Litvak Legal Group, PLLC, brings this civil matter against The College of New Jersey (thereinafter "TCNJ" and "Defendant") for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD"). In support thereof, Plaintiff avers as follows:

## I. EEOC COMPLIANCE

1.      Plaintiff exhausted all of the administrative proceedings available to her by timely filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

2.      Plaintiff timely filed a charge with the EEOC on or about April 10, 2019; a copy of the Plaintiff's charge of discrimination is attached and marked as **Exhibit "A"**. This was done in compliance with 42 U.S.C. §§ 2000e-5.

3.      On or About September 3, 2019, Plaintiff was issued a Notice of Right to Sue is attached and marked as **Exhibit "B"**.

4.      This action was timely filed within Ninety (90) days of receipt by Plaintiff of the Notice of Right to Sue.

## II. <u>JURISDICTION</u>

5.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1343, and 1367 as well as 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

6.      This action is also authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000E *et seq*., as amended, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981, 1983, and 1988, as amended.

7.      The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

8.      The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

9.      Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 29 U.S.C. § 626(c)(1); 42 U.S.C. § 1983; and 42 U.S.C. §§ 2000e-5(f) and (g).

10.     The practices alleged to be unlawful were committed in Mercer County, New Jersey, which is within the jurisdiction of the United States District Court, District of New Jersey.

## III. <u>VENUE</u>

11.     At all times relevant to this Complaint, Plaintiff was a resident of Mercer County, New Jersey.

12.     TCNJ is a state-run institution of higher education, located in Ewing Township, Mercer County, New Jersey.

13.     The unlawful employment practices under Section 1981 and title VII alleged below arose in Mercer County, New Jersey and falls under the venue of this Court.

## IV. <u>PLAINTIFF</u>

14.     Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

15.     Plaintiff is proceeding in this action under the pseudonym and will petition the court via motion for an approval.

16.     Plaintiff is a citizen of the United States, and was during all times relevant to this Complaint, a resident in Mercer County, New Jersey.

17.     Plaintiff was born in Ukraine and her race/ethnicity is Jewish.

18.     Plaintiff was the only faculty member of Ukrainian/former Soviet Union origin in TCNJ's School of Business.

19.     Plaintiff holds Ph.D. in Finance with a minor in Applied Statistics and has nearly Twenty-Five (25) years of relevant business experience in banking and finance.

20.     Plaintiff is a well published author. She regularly presents her works at local, regional, national and international conferences and professional meetings.

## V. **DEFENDANT**

21.     Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22.     Defendant TCNJ is an employer, engaged in an industry affecting interstate commerce with a principal place of business located in Ewing Township, Mercer County, New Jersey.

## VI. **STATEMENT OF FACTS**

23.     Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

### A. Doe joined TCNJ as an Assistant Professor of Finance

24.     Plaintiff has a Ph.D. in Finance and Applied Statistics and in 2014-16 was employed as a professor at the internationally recognized and ranked at the top of the National Research Universities list by the U.S. News' Best Universities Report. (The name of the school is withheld to protect the true identity of Plaintiff)

25.     Sometime in 2014, Plaintiff applied for a tenue-track position, Assistant Professor of Finance with TCNJ's School of Business.

26.     TCNJ interviewed Plaintiff off-site and invited Plaintiff for the on-campus visit.

27.     TCNJ was represented by a hiring committee consisting of allegedly four persons, two male and two female professors. One of the female committee members, Dr. Choi, was of the Korean origin.

28.     After the interview, Plaintiff was not offered the position and the Defendant instead hired another professor, Dr. Kim, a male of the Korean origin. Dr. Kim was a faculty at Frostburg State University, in Frostburg, Maryland, a Regional University ranked One Hundred and Eight (108) in Regional Universities North. He holds a Ph.D. in Finance and a Master's Degree in Applied Statistics.

29.     Plaintiff alleges that Dr. Choi played a pivotal role in the selection of Dr. Kim's candidacy based on national origin factor and despite of Doe's superior qualification.

30.     Plaintiff also alleges that Defendant's other members of the hiring committee have made a decision for hiring Dr. Kim based upon his gender and denied Doe's employment based on the same factor and despite of Doe's superior qualification.

31.     The above allegations closely relate to the claims of discrimination and retaliation by TCNJ in 2018-19 academic year based on national origin and gender that are described in further details later in this document.

32.     Sometime in Spring 2015, Plaintiff was contacted by the Dean of the School of Business at TCNJ, Dr. Keep, who started negotiations of a possible offer to replace one of the departing faculty members. Plaintiff was interested in the TCNJ offer, however she has already committed to another year of teaching at the above mentioned national and highly ranked university and, therefore, agreed to join TCNJ only beginning in 2016-17 school year.

33.     TCNJ offered Plaintiff a tenure-track Assistant Professor position with an annual salary of approximately One Hundred and Twenty-Two Thousand Dollars ($122,000).

34.     In March 2016 and before staring her employment with TCNJ, Jane Doe gave birth to her son, Doe's third child.

**B. Doe's arrival to TCNJ**

35.     Sometime before the start of the fall semester of 2016-17 school year, Plaintiff had a meeting with Dean Keep. During the meeting Dr. Keep was quite surprised to find out that Doe had another child and made some inappropriate comments about the child's birth.

36.     Dr. Keep explicitly stated that Doe was the only of recent newly hired female faculty who arrived and was not pregnant.

37.     Dr. Keep presumed female to have kids. They would have to provide accommodations and it was a factor in the hiring decisions.

38.     Dr. Keep further made comments that he was pleased that the accommodation would not have to be made, unlike in other cased of the pregnant faculty members. Apparently, Dr. Keep presumed that Doe was not to have any more children.

39.     Doe also met with TCNJ School of Business, Department of Finance Chair, Dr. Patrick, who also was very surprised that she recently had a baby and also made inappropriate comments about Doe's family composition.

40.     Dr. Patrick also assumed that Doe was not have children in the future and was quite relieved that he was not to deal with faculty's pregnancy-related accommodations.

41.     Plaintiff alleges that women often refrain from getting pregnant or giving birth before they attain tenure, or, at the minimum, obtain a tenure-track position due to widespread and well-documented discrimination on the basis of gender in the male dominated Finance field of academia.

**C.  Highly positive reviews of Doe's performance at TCNJ during 2016-17 school year**

42.     During 2016-18 Doe invited her colleagues for peer review of her lectures. Fellow professors from TCNJ attended classes taught by Plaintiff and gave her written reports and suggestions.

43.     On February 20, 2017, Dr. Patrick attended Doe's FIN 330 Class and issued a positive peer-review.

44.     On March 27, 2017, Dr. Choi attended Doe' FIN 201 Class and gave her a very positive review.

45.     Sometime in 2017, TCNJ's Promotion and Reappointment Committee reviewed Doe's performance and issued a highly positive report.

46.     Doe's profile was further reviewed by Dean of TCNJ's Business School, Dr. Keep, who also wrote a glowing review.

**D. Doe's pregnancy**

47.     Sometime in 2017, Doe became pregnant with her fourth child and approached TCNJ via Dr. Patrick. Doe was exploring her schedule and teaching options and how TCNJ could accommodate her expected birth.

48.     Doe did not wish to take any time off from teaching in the primary consideration of students' interests, as some students specifically registered to take Doe's classes. Doe intended to continue performing her teaching and other duties with minor scheduling adjustments (in partially on-line format) that were or would be offered to other faculty in similar condition or other condition requiring an accommodation.

49.     Doe also met with Assistant Dean Tammy L. Dieterich and inquired if she could offer some of her classes with minor scheduling adjustments (in partially on-line format).

50.     Assistant Dean Dieterich, conveyed that she would discuss the issue with Dr. Keep, and given the fact that TCNJ offered the same accommodations to other traveling members of the faculty, she though that the proposal was reasonable.

51.     Sometime thereafter, Dr. Keep informed Doe that the he reassigned Doe from

7

teaching desired upper level finance classes, FIN 360, with projected total of less than Sixty (60) students. Dr. Keep instead assigned her to teach a lower level FIN 201 classes with total of approximately One Hundred and Fourteen (114) students.

52.     Doe was to teach Four (4) sections of classes squeezed into the second half of the 2018 Spring semester that resulted in an abnormally hard teaching arrangement. The above-mentioned teaching load was assigned in addition to Doe's heavy research and service duties and Doe's participation in the Student Fund, an unpaid fifth class taught with Dr. Mayo, a tenured Professor at the Finance Department at TCNJ.

53.     Plaintiff alleges that the above reassignment of duties and change of classes by TCNJ were an act of laying foundation for damaging her future reappointment processes, denying reappointment, and, ultimately, tenure.

54.     At the end of 2018, Doe gave birth to her fourth child.

55.     Doe did not take any maternity time off her work and resumed teaching and performing other duties in Winter semester of 2018-19 school year, as previously assigned by the Defendant.

**E. Additional Performance Reviews and Recommendations during 2017-18 school year**

56.     On November 11, 2017, Dr. Mayo attended Doe's FIN 330 Class and issued a positive peer-review.

57.     On April 10, 2018, Dr. Hume, a tenured Associate Professor at the Finance Department at TCNJ, attended Doe's FIN 201 Class and gave her a very positive review.

58.     Sometime thereafter, Doe applied for reappointment for 2019-20 school year, Doe's fourth year at TCNJ.

59.     TCNJ's Promotion and Reappointment Committee, reviewed Doe's application for reappointment and issued a positive report and recommended Doe's reappointment.

60.     However, Promotion and Reappointment Committee's report contained an irrelevant comment about Doe's pregnancy. Doe believes the comment was made by Dr. Patrick, who previously made additional inappropriate and offensive comments about Doe's family and family composition. In particular, Dr. Patrick on multiple occasions made comments about "dirty diapers," that it was "illegal to let kids live in the car all the time" and other comments of similar nature.

61.     Dean Keep issued a highly positive review and recommended Doe's reappointment for the fourth year.

62.     Doe was ultimately reappointed for the fourth year by TCNJ.

**F. TCNJ's knowledge of forthcoming pregnancies**

63.     Sometime after the birth of the Doe's forth child and on multiple occasions, Dr. Keep, Dr. Patrick, Defendant's other officers, professors, and non-faculty employees approached Doe and asked her if she was "done having more children."

64.     Doe responded that she wanted a large family and intended to try having more children before her "window of opportunity would close," given the fact that she was approaching the end of her child-bearing age.

65.     Dr. Keep, Dr. Patrick, and Dr. Choi knew that Doe was trying to get pregnant again soon.

66.     Defendants' attitude and relationships with Doe deteriorated quickly from the time of the above conversations.

67.     Sometime in 2018 and after the above conversations with Defendant, Doe became

pregnant again. Shortly thereafter, she notified TCNJ in writing about her pregnancy status.

**G. Changes at TCNJ's management and new discrimination**

68.     Sometime in Spring 2018, Dr. Choi was elected to replace Dr. Patrick as Chair of Defendant's Department of Finance.

69.     Sometime in Spring 2018, Dr. Keep was appointed Interim Provost of TCNJ.

70.     Sometime in Spring 2018, Dr. Levin was appointed Interim Dean of the School of Business at TCNJ.

71.     Sometime in August 2018, Dr. Choi assumed the role of the Chair of TCNJ School of Business' Department of Finance.

72.     Immediately after assuming the position of Chair, Dr. Choi began attacking Doe, spreading false information and reporting misinformation to Interim Dean Levin and Interim Provost Keep.

73.     Starting with Doe's arrival at TCNJ, Defendant treated Doe unfairly, as compared to other faculty members, including persons of non-Ukrainian origin, and different gender, such as Dr. Kim and other newly hired faculty. This conduct is closely related to the discrimination of Doe by Defendant by the place of origin, Ukrainian, at the time of hiring at TCNJ in 2014.

74.     In particular, Doe had more different courses' preparations per semester/academic year; classes required more work and were harder to get good students' evaluations. Further, the other professors and newly hired faculty were assessed based on less stringent research and service standards and were better promoted and awarded.

75.     Dr. Choi with support of others at TCNJ created a hostile environment, treated Doe inferior to other professors or staff and did everything she could to hurt Doe and undermine her professional and personal reputation.

76.     Dr. Choi falsely accused Doe of wrongdoings and inaccurately reported various departmental and school topics to Dr. Levin and Dr. Keep in soliciting of Doe's discipline and other reprimands. The above were deliberate and intentional discriminative actions, specifically targeting Doe's reappointment process.

77.     On October 1, 2018 Dr. Choi attended the same class FIN330 as in 2017.

78.     Doe did not make any material changes to the structure, syllabus or presentation style of the above class since Dr. Choi attended the same class last time and issued her highly positive peer review.

79.     At this time, Dr. Choi reported that she observed some teaching deficiencies.

80.     On October 23, 2018, Dr. Patrick visited Doe's FIN 201 class.

81.     At this time, Dr. Patrick found some non-material deficiencies in Doe's teaching style. Dr. Patrick observed the same teaching techniques when he visited Doe's class in 2017 and raised no issues at that time.

82.     The above new peer reviews were specifically tailored to damage the Doe's forthcoming reappointment process.

**H. Initial report of discrimination and TCNJ's response**

83.     During one of the above-cited actions, Doe raised the issue of discrimination by Dr. Choi and reported the events to Dr. Keep. Dr. Keep ignored the request to investigate the above discrimination claims and did not direct the complaint to the person in charge of such issues.

84.     Despite the fact that Doe insisted on the investigation of discriminative conduct, Dr. Keep and Dr. Levin disregarded the requests and reprimanded the Plaintiff.

85.     Dr. Keep and Dr. Levin supposedly placed a record of discipline in the Doe's personnel file.

86.     Furthermore, Dr. Keep and Dr. Levin removed Plaintiff from newly-created MBA program and MBA-level classes.

87.     The above discipline and inclusion of the misconduct record in the file were in direct violation of TCNJ's policies and procedures.

88.     Sometime later, Doe requested her personnel file from TCNJ's Human Resources department. The above discipline was not documented in the record that was made available to Doe by Defendant.

89.     However, as stated below in further detail, TCNJ disclosed the above discipline and reprimand information to the members of the Promotion and Reappointment Committee in their effort to hurt Doe and deprive her of a fair reappointment process.

90.     Doe was also removed from teaching the Student Fund class by Dr. Levin and Dr. Choi.

91.     Sometime shortly thereafter, Doe suffered emotional trauma, became depressed, and had a miscarriage.

92.     After receiving such a harsh response to her complaints of discrimination, on November 15, 2018, Doe forwarded an extensive and comprehensive report of alleged discrimination and retaliation for the alleged discrimination to the President of TCNJ, Dr. Foster.

93.     Sometime thereafter, Dr. Forster responded to Doe's report of discrimination and offered to forward the information to the internal investigator, TCNJ's EEO Officer Ms. Tillett.

94.     Sometime in December 2018, Ms. Tillett approached Doe and asked her to withdraw the formal discrimination charge. Ms. Tillett offered to initiate an informal discussion of the issue among the actors instead.

95.     This was the first of many attempts by TCNJ to delay the process in hope of making

12

any discrimination claims time-barred and ineligible for EEOC charge and subsequent litigation.

96.     Doe refused to begin any informal review and, on the contrary, reaffirmed that she strongly believed that the above actions constitute discrimination and that she intended to file a formal charge with EEOC against TCNJ, Dr. Keep, Dr. Levin, Dr. Choi and Dr. Patrick.

97.     Sometime thereafter, TCNJ lunched a reluctant formal investigation of the discrimination and scheduled to speak with Doe.

98.     After several meetings between Doe and Tillett, it became obvious that the Defendant's internal investigation was flawed, partial and biased.

99.     Furthermore, it became obvious that the allegations and other information disclosed to Ms. Tillett somehow became known to Dr. Patrick, Dr. Choi and others at TCNJ.

**I. Contract renewal for 2020-22 school years after the report of alleged discrimination**

100.    Sometime in 2019, Doe applied for her contract renewal.

101.    According to the TCNJ's policies and procedures, Doe timely submitted the required documents to TCNJ for review by the Promotion and Reappointment Committee (thereafter "PRC").

102.    The reappointment process is governed by the TCNJ Reappointment and Promotions Document (thereafter "RP Document").

    *1. PRC review and recommendation.*

103.    PRC consisted of Dr. Patrick, Dr. Hume, and Dr. Mayo.

104.    On March 29, 2019, Doe met with PRC to discuss her reappointment. During the meeting, PRC's members did not ask any substantive questions and only asked Doe to say a few words in support of her application.

105.    On April 3, 2019, Doe received a copy of the PRC's recommendation (thereafter "PRC Report"). Report was only signed by two of three members, Dr. Patrick and Dr. Mayo, despite the contrary requirements of RP Document.

106.    Only a few weeks later, TCNJ shared a letter from Dr. Hume, who declined to sign PRC Report. Dr. Hume raised procedural and substantive issues of PRC Report. The document was shared late, in violation with TCNJ's policies and procedures, after the next stage of review was already completed. This was done in apparent attempt to undermine Doe's exceptional record of performance.

107.    PRC Report was a product of the discriminatory and retaliatory conduct, a biased and one-sided review. It was solely based on factual misstatements, omissions, and inaccuracies and was structured as a response to Doe's prior reports of discrimination. PRC did not recommend the renewal of the Doe's employment contract.

2.    *Review by Dean Wong*.

108.    On April 10, 2019, Doe submitted her response to PRC Report, where she refuted the PRC's statements and objected to the PRC's recommendation of non-renewal.

109.    Sometime thereafter, Doe was informed that Dean of Humanities and Social Sciences, Dr. Wong, was asked to step-in for interim Dean Levin and review the Doe's file.

110.    Doe forwarder Dr. Wong her response to PRC Report and shared other pertaining documents with the Dean.

111.    Sometime thereafter, Dean Wong met with Doe to discuss her reappointment. The meeting was very brief and, just like PRC, Dr. Wong did not ask any substantive questions.

112.    However, Dr. Wong did not seem to have received a copy of the Dr. Hume's separate letter and explanation why she refused to sign PRC Report. She seemed disinterested in

the Dr. Hume's letter.

113.    On May 1, 2019, Dean Wong, submitted her Review and Recommendation letter (thereafter "Dean's Report").

114.    Just like PRC Report, Dean's Report contained factual misstatements, inaccuracies and mostly relied on PRC Report and PRC's statements. Dean Wong did not recommend reappointing Doe for fifth and sixth years.

115.     According to the document, Dean Wong had an extensive conversation with Dr. Choi and Dr. Patrick and, despite the fact that she was aware of the ongoing discrimination investigation against both, adopted the opinions and information presented by the parties above.

116.    Furthermore, Dean Wong completely disregarded Dr. Hume's disagreement with PRC and Doe's objections to PRC Report.

### 3.   *Review by interim Vise-Provost*.

117.    Sometime in June 2019, Doe met with Interim Vice-Provost Blake, who was further reviewing Doe's candidacy for reappointment. During the meeting, Blake accused Doe of cancelling classes and referred to the students' comments about the cancelations.

118.    Doe objected that none of the classes were ever cancelled but were taught in blended and on-line format and the arrangements were made strictly for the purpose of attending research events, as required by her research duties.

119.    The above-mentioned travel and teaching arrangements were fully disclosed to TCNJ and approved by the administration, on multiple levels, in advance of such events. TCNJ never objected to the requests and never raised any other issues regarding the above arrangements prior to the reappointment process in 2019. Plaintiff alleges that the issues were raised by Dr. Blake solely in retaliation for Doe's report of discrimination.

120.     Most of the issues raised by Dr. Blake were related to the 2017 class/duties reassignment by Dr. Keep as mentioned in No.53 of this Complaint.

121.     Further, Doe brought it to Dr. Blake's attention that there was only one isolated comment about the "cancelation" issue and that no determination could be made based on one isolated comment from a dissatisfied student.

122.     On June 3, 2019, interim Vise-Provost David Blake issued his report on the Doe's candidacy for reappointment. Just like PRC and Dean Wong, and despite Doe's objections and pleas to the TCNJ's President for intervention, Dr. Blake relied on falsehood and inaccuracies and recommended not to reappoint Doe to fifth and sixth years.

123.     Dr. Blake, in his report, was mostly concerned with some students' comments about cancelled classes and he now cited a few instances, where students were dissatisfied with "cancelled classes."

124.     Doe contests that she was never made aware of such comments and they seem to run contra with the overall positive rating/grade given by the student-reviewers.

125.     Doe believes that the above student comments are fake, "doctored", or falsely submitted by TCNJ in effort to undermine her reappointment.

126.     Furthermore, the language and format used by the above student-reviewers was inconsistent with other students' reviews.

   4.   *President Foster's recommendation of non-reappointment*.

127.     On August 1, 2019, TCNJ's President, Dr. Foster, issued her opinion, concurring with PRC, Dr. Wong, and Dr. Blake and not reappointing Doe to fifth and sixth years.

128.     Dr. Foster based her decision on falsehood and inaccuracies instead of facts and circumstances, in an apparent attempt to "get rid" of Doe in retaliation for her report of

discrimination and the EEOC Charge.

129.    The President's decision is final and now Doe is in her terminal academic year at TCNJ.

## VII.  STATEMENT OF CLAIMS

### COUNT I
### AGAINST DEFENDANT TCNJ– GENDER BASED DISCRIMINATION
### TITILE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

130.    Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

131.    Plaintiff is a member of protected classes, as her gender is a woman/female.

132.    Plaintiff was not only qualified to perform the jobs for which she was hired, but also exceeded expectations and requirements for the performance of her employment duties, as compared to other persons in her position.

133.    The conduct of Defendant's managers, supervisors, officers set forth above is attributable to Defendant under the doctrine of *respondeat superior.*

134.    Plaintiff suffered adverse job action, including but not limited to demotion, reassignment of duties, and employment contract non-renewal.

135.    Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

136.    Circumstances exist related to the above cited adverse employment action that give rise to an inference of discrimination.

137.    Defendant discriminated against Plaintiff on the basis of her being a woman.

138.    No legitimate, non-discriminative reason exist for the above cited adverse employment action that Plaintiff suffered.

139.    The reasons cited by Defendant for the above referenced adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II
## AGAINST DEFENDANT TCNJ– NATIONAL ORIGIN DISCRIMINATION
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

140.    Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

141.    Plaintiff is a member of protected classes in that she is of the was born and immigrated from Ukraine and is of Jewish race/heritage and ethnicity.

142.    Plaintiff was not only qualified to perform the jobs for which she was hired, but also exceeded expectations and requirements for the performance of her employment duties, as compared to other persons in her position.

143.    Plaintiff suffered adverse job action, including but not limited to demotion, reassignment of duties, and employment contract non-renewal.

144.    Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

145.    Circumstances exist related to the above cited adverse employment action that give rise to an inference of discrimination.

146.    Defendant discriminated against Plaintiff on the basis of national origin and ethnicity.

147.    No legitimate, non-discriminative reason exist for the above cited adverse employment action that Plaintiff suffered.

18

148.   The reasons cited by Defendant for the above referenced adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNTY III
## AGAINST DEFENDANT TCNJ – PREGNANCY DISCRIMINATION
## THE PREGNANCY DISCRIMINATION ACT,
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

149.   Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

150.   Plaintiff is a member of protected classes, as her gender is a woman/female and due to her pregnancy and her status as a mother, as Defendant was pregnant during the relevant periods.

151.   The conduct of Defendant's managers, supervisors, officers set forth above is attributable to Defendant under the doctrine of *respondeat superior*.

152.   Plaintiff was not only qualified to perform the jobs for which she was hired, but also exceeded expectations and requirements for the performance of her employment duties, as compared to other persons in her position.

153.   Similarly situated employees who were not pregnant or new mothers were treated more favorably and partially than Plaintiff, and were not harasses, excessively scrutinized and pretextually disciplined, and other adverse actions were not taken against such persons.

154.   Defendant knew of Plaintiff's pregnancies and births.

155.   Plaintiff suffered adverse job action, including but not limited to demotion, reassignment of duties, and employment contract non-renewal.

156.    Circumstances exist related to the above cited adverse employment action that give rise to an inference of discrimination.

157.    Defendant discriminated against Plaintiff on the basis of her being a woman, pregnant woman and a new mother.

158.    No legitimate, non-discriminative reason exist for the above cited adverse employment action that Plaintiff suffered.

159.    The reasons cited by Defendant for the above referenced adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV
## AGAINST DEFENDANT TCNJ– RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

160.    Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

161.    Plaintiff engaged in activity protected by Title VII.

162.    Plaintiff complained of discrimination internally by reporting the same to the President of TCNJ, and human resources and then filed her complaint with EEOC.

163.    Defendant had actual and constrictive knowledge of the discrimination allegations, complaints, reports and ongoing investigations.

164.    Thereafter, Defendant took adverse employment action against Plaintiff, including but not limited to non-renewal of her employment contract.

165.    There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V
## AGAINST DEFENDANT TCNJ– GANDER BASED DISCRIMINATION
## NEW JERSEY LAW AGAINST DISCRIMINATION

166.   Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

167.   Plaintiff is a member of a protected class in that Plaintiff is female.

168.   Plaintiff was qualified to perform the job for which she was hired.

169.   Plaintiff suffered adverse job actions, including but not limited to, hostile work environment, harassment, reassignment of duties, demotion and contract non-renewal/termination.

170.   Similarly situated people outside of Plaintiff's protected class were treated more favorably that Plaintiff.

171.   Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

172.   Plaintiff reported discrimination to Defendant's President and Human Resources.

173.   Despite the reporting, Defendant failed to curb and rectify the discriminatory behavior.

174.   No legitimate, non-discriminatory reasons exist for the above cited adverse employment action that Plaintiff suffered.

175.    The reasons cited by Defendant TCNJ for the above referenced employment actions that Plaintiff suffered are pretext for discrimination.

176.     As a result of Defendant TCNJ unlawful gender discrimination, Plaintiff suffered damages as set for herein.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI
## AGAINST DEFENDANT TCNJ– NATIONAL ORIGIN DISCRIMINATION
## <u>NEW JERSEY LAW AGAINST DISCRIMINATION</u>

177.     Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

178.     The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her national origin (Ukraine).

179.     As a result of Defendant's unlawful national origin discrimination, Plaintiff suffered damages as set forth herein.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VII
## AGAINST DEFENDANT TCNJ – PREGNANCY DISCRIMINATION
## <u>NEW JERSEY LAW AGAINST DISCRIMINATION</u>

180.     Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

181.     Plaintiff is a member of a protected class in that Plaintiff is female and was pregnant at the time of the adverse employment action.

182.     Defendant TCNJ had actual and constructive knowledge of her pregnancy.

22

183.    Plaintiff was qualified to perform the job for which she was hired.

184.    Plaintiff suffered adverse job actions, including but not limited to, hostile work environment, harassment, reassignment of duties, demotion and contract non-renewal/termination.

185.    Similarly situated people outside of Plaintiff's protected class were treated more favorably that Plaintiff.

186.    Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

187.    Plaintiff reported discrimination to Defendant's President and Human Resources.

188.    Despite the reporting, Defendant failed to curb and rectify the discriminatory behavior.

189.    No legitimate, non-discriminatory reasons exist for the above cited adverse employment action that Plaintiff suffered.

190.    The reasons cited by Defendant TCNJ for the above referenced employment actions that Plaintiff suffered are pretext for discrimination.

191.    As a result of Defendant TCNJ unlawful gender and pregnancy discrimination, Plaintiff suffered damages as set for herein.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VIII
## AGAINST DEFENDANT TCNJ– RETALIATION
## <u>NEW JERSEY LAW AGAINST DISCRIMINATION</u>

192.    Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

193.    Plaintiff engaged in activity protected by New Jersey Law Against Discrimination.

194.    Plaintiff complained of discrimination internally by reporting the same to the President of TCNJ, and human resources and then dual filed her complaint with EEOC and the state agency.

195.    Defendant had actual and constrictive knowledge of the discrimination allegations, complaints, reports and ongoing investigations.

196.    Thereafter, Defendant took adverse employment action against Plaintiff, including but not limited to non-renewal of her employment contract.

197.    There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## VIII.  <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff, Jane Doe, request that the Court grant her the following relief against Defendant:

   a.  Compensatory damages;

   b.  Punitive damages;

   c.  Liquidated damages;

   d.  Emotion pain and suffering;

   e.  Reasonable attorneys' fees;

   f.  Recoverable costs;

   g.  Pre and post judgement interest;

   h.  An allowance to compensate for a potential negative tax consequences;

i. A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, PDA and the NJLAD.

j. Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

k. Order Defendant to remove and expunge, or cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's records of employment, including, but not limited the pre-textual reasons cited for its adverse actions, disciplines, and contract non-renewal;

l. Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and federal statutory provision sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure; and

m. Order Defendant to reinstate Plaintiffs employment to an appropriate position with all benefits and eligibility for short tenue clock and ability to apply for tenue and at an equal or improved salary.

## IX.  **RESERVATION OF RIGHTS**

Pursuant to the rules of pleading and practice, Doe reserves the right to assert additional violations of federal and state law.

## X.  **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all triable issues.

## XI.  **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter is controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

Dated: November 25, 2019

                           By: /S/_____
                                 SERGEY JOSEPH LITVAK, ESQUIRE
                                 Attorney for Plaintiff
                                 LITVAK LEGAL GROUP, PLLC.

## <u>CERTIFICATION PURSUANT TO R.4:15-1</u>

Upon knowledge and belief, I hereby certify that there are no other actions or arbitrations related to this suite pending or presently contemplated.

Dated: November 25, 2019

By: /S/_____
    SERGEY JOSEPH LITVAK, ESQUIRE
    Attorney for Plaintiff
    LITVAK LEGAL GROUP, PLLC.
    7 Robert Drive,
    Princeton Junction, NJ 08550
    (732) 624.6283

## <u>CERTIFICATION OF NOTICE</u>

Pursuant to N.J.S.A. 56:8-20 Plaintiff is mailing a copy of this Complaint to the office of The

Attorney General, Richard J. Hughes Justice Complex, 25 West Market Street in the City of Trenton,

County of Mercer, in the state of New Jersey.


Dated: November 25, 2019

<div style="margin-left:40%">

By: /S/_____

SERGEY JOSEPH LITVAK, ESQUIRE
Attorney for Plaintiff
LITVAK LEGAL GROUP, PLLC.
7 Robert Drive,
Princeton Junction, NJ 08550
(732) 624.6283

</div>

## <u>DESIGNATION OF TRIAL COUNSEL</u>

PLEASE TAKE NOTICE that pursuant to Rule 4:25-4, Sergey J. Litvak Esq. is designated as trial counsel for Plaintiff in this case.

By: /S/_____
    SERGEY JOSEPH LITVAK, ESQUIRE
    Attorney for Plaintiff
    LITVAK LEGAL GROUP, PLLC.
    7 Robert Drive,
    Princeton Junction, NJ 08550
    (732) 624.6283