UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JANE DOE,

    Plaintiff,

v.

THE COLLEGE OF NEW JERSEY,

    Defendant.

Civil Action No. 19-20674 (FLW) (ZNQ)

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court upon Plaintiff Jane Doe's ("Doe") Motion to Proceed Anonymously ("Motion"). (ECF No. 3.) Defendant the College of New Jersey ("TCNJ") opposed, (ECF No. 6), and Doe filed a reply, (ECF No. 11). The Court has carefully considered the arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Doe's Motion is denied and the temporary seal over the Moving Brief (ECF No. 6) and Reply (ECF No. 11) is lifted.

**I.**     **BACKGROUND**

The following is a summary of Doe's allegations as outlined in her Complaint. (Compl., ECF No. 1.) Doe was hired as a tenure-track Assistant Professor in the Department of Finance of TCNJ's School of Business. (*Id.* ¶¶ 32–34, 39.) She alleges "Dr. Keep" and "Dr. Patrick" made comments about accommodating female professors' pregnancies and about her recent birth before she began work at TCNJ. (*Id.* ¶¶ 36–38.) She claims that, after she became pregnant in 2017, she was given a difficult teaching assignment by Dr. Keep in order to damage her chances of reappointment. (*Id.* ¶¶ 47–48, 51–53.)

At the end of 2018, Doe gave birth and was reappointed for the 2019–20 school year. (*Id.* ¶¶ 54, 58–62.) The Promotion and Reappointment Committee's report, however, contained a

comment about Doe's pregnancy. (*Id.* ¶ 60.) Thereafter, Doe claims she was approached by multiple TCNJ employees, including Drs. Keep and Patrick, who asked if Doe was "done having more children." (*Id.* ¶ 63.) Doe affirmed that she was trying to have more children. (*Id.* ¶¶ 64–65.) She alleges that when "Dr. Choi" became the Chair of the Department of Finance, he began "spreading false information and reporting misinformation to Interim Dean Levin and Interim Provost Keep," and that he sought to have Doe disciplined based on allegedly false information. (*Id.* ¶¶ 68, 72, 76.) Dr. Choi attended one of Doe's classes in October 2018 and noted deficiencies in her teaching style. (*Id.* ¶¶ 77–79.) Doe reported what she perceived to be Dr. Choi's discrimination to Dr. Keep. (*Id.* ¶ 83.) According to Doe, Dr. Keep and "Dr. Levin" ignored her complaints and disciplined her by removing her from certain MBA-level classes and placing a record of discipline in her personnel file. (*Id.* ¶¶ 84–87.) Doe claims she suffered emotional trauma, became depressed, and suffered a miscarriage. (*Id.* ¶ 91.)

In 2019, Doe applied for reappointment. (*Id.* ¶ 100.) The Promotion and Reappointment Committee's report was issued, signed by only two of its three members, Dr. Patrick and "Dr. Mayo." (*Id.* ¶ 105.) In a letter, the third member, "Dr. Hume," objected to the report as noncompliant with TCNJ's policies. (*Id.* ¶ 106.) "Dr. Wong," Dean of Humanities and Social Sciences at TCNJ, "Dr. Blake," Vice-Provost, and "Dr. Foster" each reviewed the report, and each concurred that Doe should not be reappointed. (*Id.* ¶¶ 108–116, 122, 127.)

On November 25, 2019, Doe filed a seven-count complaint under pseudonym, alleging TCNJ discriminated against her on the basis of her gender, pregnancy, and national origin, in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and New Jersey's Law Against Discrimination ("LAD"), N.J. Stat. Ann. 10:5-1 *et seq.* (Compl. 17–19, 21–22, ECF No. 1.) She further alleges TCNJ retaliated against her for internally reporting the discrimination. (*Id.* ¶¶ 161–64, 192–97.)

2

In the instant Motion, Doe seeks to maintain her anonymity and proceed pseudonymously. (*See* Moving Br. 9–10, ECF No. 3-3.) Doe contends the nine factors outlined in *Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011), weigh in favor of her proceeding anonymously. (*Id.* at 3.) TCNJ opposes Doe's Motion, highlighting that the use of a pseudonym has traditionally been reserved for exceptional cases. (Def.'s Opp'n 1–2, ECF No. 6.) TCNJ contends the *Megless* factors weigh against allowing Doe to proceed anonymously. (*Id.* at 5.)

## II. **DISCUSSION**

It has long been held that "[o]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public," *Megless*, 654 F.3d at 408 (quoting *Daubney v. Cooper*, 109 Eng. Rep. 438, 441 (K.B. 1829)), an "important dimension" of which is that the person using the court identify themselves, *id.* (quoting *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997)). The use of pseudonyms "runs afoul of the public's common law right of access to judicial proceedings . . . ." *Id.* (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir.2000)). Federal Rule of Civil Procedure 10(a) reflects those principles, stating "[t]he title of the complaint must name all the parties . . . ." *See id.*

"While not expressly permitted under Federal Rule of Civil Procedure 10(a), in exceptional cases courts have allowed a party to proceed anonymously." *Id.* Courts have allowed parties to use fictitious names in cases involving "abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990); *Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (collecting cases and discussing the widespread public fear of AIDS). "That a plaintiff may suffer embarrassment or economic harm is not enough. Instead, a plaintiff must show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.'" *Id.* (quoting *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir.2010)) (internal

citation omitted). In *Megless*, the United States Court of Appeals for the Third Circuit summarized the nine non-exclusive factors courts within its jurisdiction consider when determining whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation. *Megless*, 654 F.3d at 409. The six factors that weigh in favor of anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* (quoting *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 467–68 (E.D. Pa. 1997)). The three factors that weigh against anonymity include:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Provident Life & Acc. Ins. Co.*, 176 F.R.D. at 467–68). In light of the foregoing principles, the Court addresses each factor in turn.

### A. *Megless* Factors Weighing in Favor of Anonymity

First, the Court asks: "[H]as the identity of the litigant been kept confidential?" *Megless*, 654 F.3d at 410. The Court accepts Doe's contention that she "has made significant efforts to maintain the confidentiality of her identity," (Moving Br. 5; *see also* Pl.'s Reply 2–5), and will weigh the first factor in favor of her use of a pseudonym, *see Doe v. Rutgers*, No. 18-12952, 2019 WL 1967021, at *2 (D.N.J. Apr. 30, 2019) ("Factor (1) weighs in favor plaintiffs who 'make

4

substantial efforts to maintain anonymity' and 'limi[t] the disclosure of sensitive information to few other people.'") (quoting *Doe v. Rider Univ.*, No. 16-4882, 2018 WL 3756950, at *3 (D.N.J. Aug. 7, 2018)). The Court notes, however, that a journalist correctly surmised Doe's identity based on the allegations in her Complaint. (*See* Def.'s Opp'n to Mot. 3 & n.1; *see Rutgers*, 2019 WL 1967021, at *2 (noting the plaintiff's identity was not disclosed in news articles)).

The second question is: "What harm is the litigant seeking to avoid, and is the litigant's fear reasonable?" *Megless*, 654 F.3d at 410. Doe claims, generally, that disclosure of her identity could cause her and her family emotional distress and public ridicule and shame. (Moving Br. 5.) She also argues that revealing her identity will have a devastating impact on her career in academia and risk her ostracization and exclusion from the male-dominated field. (*Id.* at 6.) The Court disagrees with Doe's general assertion that she will face public ridicule. It does not appear that preventing Doe from proceeding anonymously will subject her to public or social stigmatization of the same stripe faced by litigants whose identity this Court has allowed to be kept private. That said, the Court agrees that female professors who bring lawsuits against their employers for discrimination potentially risk unfair professional stigma. The Court is conscious, however, that professional stigma could exist even if the lawsuit was not based on Doe's protected class; lawsuits against employers tend to carry professional repercussions. Further, unlike in *Doe v. Trishul Consultancy, LLC*, No. 18-16468, 2019 WL 4750078, at *4 (D.N.J. Sept. 30, 2019), in which this Court found that disclosure of a victim of sexual assault's identity carried a concrete risk of severe emotional harm and revictimization, the Court does not find more than general allegations of emotional distress or other harm in this case. Particularly, while Doe alleges the treatment by her employer caused her severe emotional distress, it is unclear how the public pursuit of this action would cause her greater embarrassment or emotional distress beyond the potential professional repercussions. (*See* Moving Br. 3–6.)

In her reply, Doe adds three additional arguments: That identifying her will (1) reveal her status "as a practicing and traditional Jew," risking her and her children's safety "in light of the recent rise of Anti-Semitic violence"; (2) have academic repercussions on her high school-aged children because most of their teachers attended TCNJ; and (3) that the stigma of "discriminated pregnancy" could follow her toddlers once they are identified. (Pl.'s Reply 5.) The Court finds those fears speculative and not reasonable. This Court regularly hears claims by and against Jewish litigants, and Doe had failed to show any evidence that Jewish litigants are put at a greater risk of anti-Semitic discrimination or violence by virtue of using their names in federal court. As for Doe's second argument, without additional evidence, the Court does not see why Doe's children's teachers would have such intense loyalty to TCNJ that they would risk their careers to retaliate against Doe on TCNJ's behalf. In fact, the Court does not see why the teachers would even be aware of this case. Finally, without additional evidence or any citation, the Court does not recognize a "discriminated pregnancy" stigma. In recognition of the professional stigma, factor two weighs slightly in favor of anonymity.

The third inquiry is: "[I]f this litigant is forced to reveal his or her name, will other similarly situated litigants be deterred from litigating claims that the public would like to have litigated?" *Megless*, 654 F.3d at 410. Doe asserts that discriminated plaintiffs should be allowed to use pseudonyms "so that other victims would feel more comfortable suing to vindicate their rights." (Moving Br. 6.) She also points, generally, to the risk of stigmatization. (*Id.*) The Court disagrees. There is no evidence that an alleged social stigma against pregnant woman impedes their ability to vindicate their employment rights. This factor does not support anonymity.

The fourth question is: "[A]re the facts not relevant to the outcome of the claim?" *Megless*, 654 F.3d at 410. Plaintiff's claim is fact-sensitive—not one posing purely a question of law. Consequently, the Court finds the public's interest is not atypically weak. *See Rutgers*, 2019 WL

6

1967021, at *3 (finding the fourth factor does not apply because the plaintiff's claim was fact-sensitive).

Fifth, the Court asks: "[W]ill the claim be resolved on its merits if the litigant is denied the opportunity to proceed using a pseudonym, or will the litigant potentially sacrifice a potentially valid claim simply to preserve their anonymity?" *Megless*, 654 F.3d at 410. Though deterred, Doe concedes she will continue to pursue this action even if her identity is disclosed. (Moving Br. 7.)

The sixth question is: "[I]s the litigant seeking to use a pseudonym for nefarious reasons?" *Megless*, 654 F.3d at 411. There is no evidence, and TCNJ does not assert, (Def.'s Opp'n to Mot. 5), that Doe has any ulterior or illegitimate motive in seeking to proceed pseudonymously, so this factor has no bearing on the Court's determination, *see Megless*, 654 F.3d at 411.

### B. *Megless* Factors Weighing Against Anonymity

The Court now moves to the factors weighing against use of a pseudonym, and finds the first factor weighs against use of a pseudonym. The first factor is a given. *Megless*, 654 F.3d at 411 ("[W]e must acknowledge the thumb on the scale that is the universal interest in favor of open judicial proceedings . . . ."). Next the Court asks: "[D]oes the subject of the litigation heighten the public's interest?" *Megless*, 654 F.3d at 411. The Court does not find the second factor weighs against anonymity because it does not appear that the public has an unusually strong interest in knowing Doe's identity. Lastly, the Court asks: "[I]s the party opposing the use of a pseudonym doing so based on nefarious reasons?" *Id.* Doe submits that any opposition to her Motion would only be motivated by a desire to intimidate and further damage her career prospects. (Moving Br. 9.) The Court will not make that inference based solely on TCNJ's opposition and finds this factor inapplicable.

## III. CONCLUSION

Upon consideration of each factor and their respective weights, the Court finds that this case does not fall into that special category of cases in which the plaintiff's privacy interests outweigh the public interest in open judicial proceedings. At bottom, the most significant threat of revealing Doe's identity is the unfair professional stigma that may result from her publicly proceeding against her employer. While the Court acknowledges that risk, Doe's efforts to maintain her anonymity, and the deterrent effect that disclosure can have on plaintiffs bringing these types of claims, the professional damage caused by proceeding against one's employer is attendant to litigation beyond the civil rights sphere and is not a privacy interest sufficient here to justify departure from our legal norms or contravention of the public's right to open judicial proceedings. As the United States Court of Appeals for the Third Circuit stated, "the thumb [is] on the scale" in favor of open judicial proceedings, *Megless*, 654 F.3d at 411, and this is not such an exceptional case that the public interest has been countervailed.

## IV. ORDER

For the reasons set forth above, and other good cause shown,

**IT IS** on this 22nd day of January, 2020 **ORDERED** that:

1. Doe's Motion (ECF No. 3) is **DENIED**.

2. Doe shall file an Amended Complaint using her name within fourteen (14) days of entry of this Order.

3. The temporary seal over the Moving Brief (ECF No. 6) and Reply (ECF No. 11) is lifted.

ZAHID N. QURAISHI
UNITED STATES MAGISTRATE JUDGE