**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1365
_____

NONNA Y. SOROKINA,
   Appellant

v.

THE COLLEGE OF NEW JERSEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:19-cv-20674)
District Judge: Honorable Robert Kirsch
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 17, 2025

Before: PHIPPS, FREEMAN, and CHUNG, *Circuit Judges*

(Opinion filed: May 5, 2025)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Dr. Nonna Y. Sorokina appeals the District Court's order granting her former employer, the College of New Jersey (the "College"), summary judgment on her claims of gender, pregnancy, and national-origin discrimination and retaliation. She also appeals certain limitations the District Court placed on discovery. We will reverse the summary-judgment order insofar as it granted summary judgment on Sorokina's gender-discrimination and retaliation claims concerning the non-renewal of her employment contract. In all other respects, we will affirm the summary-judgment order. We also will affirm the discovery order.

**I**[1]

Sorokina was born in Ukraine. From 2016 to 2020, she was a tenure-track Assistant Professor in the Department of Finance (the "Department") within the College's School of Business. She first applied for a position in the Department in 2015, and she was interviewed by a search committee comprised of three Department professors (Dr. Susan Hume, Associate Professor; Dr. Thomas Patrick, Professor and then-chair of the Department; and Dr. Sueng Hee Choi, then-Associate Professor) and the then-Dean of the School of Business, Dr. William Keep. The College hired a man of Korean descent for that position. During the hiring process, Patrick made a comment

---

[1] Because we write for the parties, we recite only the facts pertinent to our decision. We recount the facts in the light most favorable to the party opposing summary judgment. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

2

about Sorokina's appearance. Another position soon became available, and the College offered it to Sorokina. She accepted the offer and began teaching in Fall 2016.

Sorokina became pregnant in 2017 and expected to give birth late that year. That summer, she requested an accommodation to teach her Spring 2018 courses in a "blended" manner—i.e., teach in person once a week and otherwise teach online. Keep denied this request. Keep explained that the College "do[es] not teach blended courses during the academic semester and there is no desire to establish that precedence." ECF No. 114-18 at 2.[2] However, he changed Sorokina's schedule so that she would teach four sections of a half-unit undergraduate course starting later in Spring 2018. Sorokina accepted this change. In December 2017, she gave birth to a child.

In a later interview about Sorokina's request, Keep stated, "Being pregnant and teaching a blended course could have posed a problem. It is not easy to schedule and plan when you are pregnant." ECF No. 121-7 at 2. He also acknowledged that the College had permitted two male professors to teach online during semesters when they were living abroad. Keep said those "exceptions" were "experimental[,] with the approval of the provost." *Id.*

After the birth of Sorokina's child in December 2017, various College faculty members asked Sorokina about her plans for future children. She "always" told them that

---

[2] All citations to ECF numbers refer to the District Court's docket.

3

"we love kids, we love having big families. It's in our national tradition as Jewish to have a lot of kids." App. 311.[3]

In 2018, Sorokina helped develop a new MBA program at the College. That fall, however, Keep and the Interim Dean of the School of Business, Dr. Bozena Leven, removed Sorokina from the program, placing a record of the removal in her file. They cited unsatisfactory contributions and unprofessional conduct. Specifically, they stated that Sorokina would not accept that she could teach only one MBA course, could not use an undergraduate textbook, and could not obtain and use Bloomberg terminals for her course due to cost constraints. They also stated that she refused requests to modify her proposed MBA course syllabus to differentiate it from her undergraduate courses, and that she inappropriately sought to choose who would teach another MBA course, which was beyond her role as a junior faculty member.

In November 2018, Sorokina suffered a miscarriage. Sorokina has submitted no evidence that anyone at the College knew of that pregnancy at the time.

In December 2018, Sorokina shared concerns of discrimination with a College Equal Employment Opportunity Officer ("EEO Officer"), and the College began an internal investigation. That same month, Sorokina informed the College that she had

---

[3] Sorokina's appellate brief misrepresents the record regarding what she told College faculty about her plans to have future children. For instance, she argues that she "announced that she was trying to get pregnant during the party to honor Dean Keep's transfer to an Interim Provost in Summer [2018]" and "spoke openly about her active attempts to get pregnant on several other occasions[,] including the Finance Department's party at her home on September 9, 2018." Appellant's Br. at 21. In support of these arguments, she cites her deposition, which contains no such testimony.

"initiated a filing" with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 114-21 at 30. On March 11, 2019, she emailed the College EEO Officer, providing details of her allegations of pregnancy and national-origin discrimination and stating that she would soon file a formal charge of discrimination with the EEOC.

On April 22, 2019, an obstetrics report described Sorokina as being pregnant with less than eight weeks of gestation. As with her Fall 2018 pregnancy that ended in a miscarriage, Sorokina has submitted no evidence that anyone at the College knew of her Spring 2019 pregnancy at the time of the events giving rise to this case.

The College initially hires tenure-track professors for a three-year term. At the end of the second year of employment, those professors must apply for reappointment to a fourth year. If they successfully obtain reappointment to a fourth year, they proceed to the third-year-review process to assess their teaching, scholarly activity, and service. That process includes four levels of evaluation: (1) the Finance Department's Promotion and Reappointment Committee ("PRC"), (2) the Dean, (3) the Provost, and (4) the President; all of whom participate in a recommendation to the Board of Trustees. The third-year-review process may result in an appointment to one or two additional years of employment, or a contract non-renewal.

The College reappointed Sorokina to a fourth year (2018–2019), based on the unanimous agreement of Patrick, Choi, and Keep. In Spring 2019, Sorokina began her third-year-review process. Three professors—Patrick, Hume, and Dr. Herbert Mayo—sat as the PRC. On April 2, the PRC recommended that Sorokina not be reappointed. Its report praised Sorokina's scholarly achievements but listed deficiencies in teaching and

5

service. For instance, it reported that some of Sorokina's students struggled or were disengaged, and Sorokina often cancelled or arrived late to classes. With respect to service, it stated that Sorokina had made misrepresentations in professional communications, had been removed from the MBA program, was unwilling to work with others, and did not "pull [her] own weight" in the Department. App. 339. It also mentioned that Sorokina sent an email to the Department Chair claiming that she worked harder and better than others. Finally, it stated that the Department had been supportive of Sorokina and that its change to her Spring 2018 schedule had, "in effect, provided her with an additional seven weeks of paid maternity leave." *Id.*

Hume disagreed with the PRC's recommendation and did not sign it. She objected that the PRC's report omitted facts, was misleading, and was developed without collaboration among the three committee members. She issued a separate recommendation that Sorokina's contract be renewed based on teaching excellence and commitment to service. (Although Hume's recommendation did not mention gender discrimination, she referred to Sorokina as a "role model" in a "male-centered major and industry profession." App. 343. Hume later testified that Patrick engaged in "gender microaggressions" and bullied female colleagues. App. 273.)

On April 10, 2019, Sorokina provided a written response to the PRC report and claimed that it was issued in retaliation for her report of discrimination. Among other things, she asserted that she only cancelled classes for snow days and when she participated in conferences, and she started classes on time but began with casual interactions with students. She also responded that the two courses she designed for the

6

MBA program complied with management's initial requirements, and she was not provided an opportunity to adjust the courses in response to new requests.

On April 16, 2019, Sorokina filed an EEOC charge of discrimination based on sex, gender, pregnancy, and national origin, and retaliation.

Meanwhile, Sorokina's review process continued.  Dr. Jane Wong, Dean of Humanities and Social Sciences, conducted Sorokina's second-level review and concurred with the PRC's recommendation that the College not renew Sorokina's contract.  In a report dated May 1, 2019, Wong commended Sorokina's scholarship but agreed with the PRC that Sorokina's teaching and service fell below expectations.  Wong noted that peer evaluations of Sorokina's teaching had worsened during Sorokina's third year, and Wong found Sorokina's responses to student complaints of lateness and cancelled classes to be incredible.  Wong also opined that Sorokina had not contributed to the College's "spirit of service and citizenship," pointing to several instances of unprofessional conduct addressed by the PRC.  App. 349.  Addressing Sorokina's characterization of the PRC report as retaliatory, Wong said Patrick admitted knowing Sorokina made allegations of discrimination but Patrick denied knowing any details of the allegations.

Dr. David Blake, Interim Vice Provost for Faculty and Academic Planning, conducted the third-level review.  In a letter dated June 3, 2019, he recommended against renewing Sorokina's contract.  Echoing the PRC's and Wong's reviews, he commended Sorokina's scholarship but cited a lack of improvement in her teaching, her "difficulty

maintaining productive, working relationships with [her] colleagues," and her "unprofessional conduct." App. 354.

College President Kathryn Foster conducted the fourth-level review and declined to renew Sorokina's contract. Foster issued her decision in a June 30, 2019 letter, citing deficiencies in teaching and service and relying on the evaluations by the PRC, Wong, and Blake. The College later hired a man of non-Ukrainian descent to replace Sorokina.

In July 2019, the College completed its investigation of Sorokina's internal EEO complaint, which Sorokina had amended to include a retaliation claim after the non-renewal of her contract. The College determined that the allegations of pregnancy discrimination, national-origin discrimination, and retaliation were unsubstantiated.

Sorokina sued the College in November 2019, bringing claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA").[4] Following discovery, the District Court granted summary judgment for the College on all claims.

## II[5]

We exercise plenary review of an order granting summary judgment. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material

---

[4] Sorokina also brought similar claims under the New Jersey Law Against Discrimination, but she has not pursued them on appeal.

[5] The District Court exercised subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. This Court has jurisdiction under 28 U.S.C. § 1291.

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[W]e view the underlying facts and all reasonable inferences" from them "in the light most favorable to the party opposing the motion." *Blunt*, 767 F.3d at 265 (citation omitted).

Title VII prohibits employers from discriminating against employees based on their protected characteristics, including sex or national origin, or retaliating against employees based on their protected activity, including opposition to discrimination. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3. The PDA "makes clear that Title VII's prohibition against sex discrimination includes pregnancy discrimination." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 276 (3d Cir. 2024).

The Title VII claims here are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As a first step, the plaintiff must establish a prima facie case. *Id.* at 802. To make a prima facie case of discrimination, the plaintiff must show that: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Qin v. Vertex, Inc.*, 100 F.4th 458, 473 (3d Cir. 2024) (cleaned up). A prima facie case of pregnancy discrimination has an additional requirement: the plaintiff must also show that the employer knew she belonged to the protected class when the employer took the adverse

9

employment action. *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

To make a prima facie case of retaliation, the plaintiff must show "(1) that she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022) (cleaned up and citation omitted).

If the plaintiff makes her prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its challenged employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the burden then shifts back to the plaintiff "to show that the defendant's proffered reason is merely pretext for intentional discrimination" or retaliation. *Qin*, 100 F.4th at 474 (cleaned up); *Canada*, 49 F.4th at 346.

A.

Sorokina did not establish a prima facie case of national-origin discrimination with respect to the non-renewal of her contract.[6] She contends that Choi sabotaged her contract renewal (by orchestrating Sorokina's removal from the MBA program and

---

[6] Sorokina's Title VII claims were timely as to conduct that occurred on or after June 20, 2018—i.e., within 300 days of her April 16, 2019, EEOC charge. 42 U.S.C. § 2000e–5(e)(1). That includes the College's removal of Sorokina from the MBA program in Fall 2018 and its non-renewal of her contract in April 2019.

10

providing a negative peer review of Sorokina's teaching) based on anti-Ukrainian bias. She also points to the College's decision to hire a professor of non-Ukrainian origin when Sorokina first applied for a position and to hire another professor of non-Ukrainian origin to replace her. But Sorokina cites no evidence that would permit a reasonable inference that Choi's actions stemmed from anti-Ukrainian bias. Nor could a reasonable jury infer national-origin discrimination based solely on the College hiring professors who do not share Sorokina's national origin.[7]

B

Sorokina also did not establish a prima facie case of pregnancy discrimination with respect to the non-renewal of her contract. She did not produce evidence that the participants in her third-year-review process knew that she was pregnant (whether because she informed them of her pregnancy or because she was noticeably pregnant) while they considered a contract renewal. So she has not shown that the employer knew she belonged to a pregnancy-related protected class. *Geraci*, 82 F.3d at 581.

She also asserts that the College discriminated against her based on her intention to become pregnant. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 206 (1991). But she points to no evidence that any relevant decisionmakers at the College knew during the

---

[7] To the extent that Sorokina argues that her removal from the MBA program was the result of national-origin discrimination, that claim fails for similar reasons.

11

contract-renewal process that she was trying to become pregnant, much less that they chose not to renew her contract on that basis.[8]  *See supra* note 3.

## C

Sorokina alleges that the College took two adverse employment actions based on gender discrimination: removing her from the MBA program and opting not to renew her contract.  The College is entitled to summary judgment as to Sorokina's removal from the MBA program, but Sorokina's challenge to the non-renewal of her contract may proceed to trial.

We will assume without deciding that Sorokina established a prima facie case that the College removed her from the MBA program due to gender discrimination.  In response, the College articulated several legitimate, non-discriminatory reasons for its action.  *See supra* Section I (discussing Sorokina's position about the number of courses she would teach, her syllabus and textbook, the use of Bloomberg terminals, and who would teach another MBA course).  Sorokina disputes certain facts underlying the College's articulated non-discriminatory reasons.  But she "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

---

[8] Even assuming Sorokina established a prima facie case of pregnancy discrimination concerning her removal from the MBA program, that claim fails because the College has proffered legitimate, non-discriminatory reasons for her removal, and no reasonable jury could find that those reasons were pretextual.  *See infra* Section II.C.

She must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the College's explanations such that a reasonable factfinder could rationally find the explanations were "either a post hoc fabrication or otherwise did not actually motivate the employment action." *Id.* at 764–65 (cleaned up). This she has not done.

Turning to the College's non-renewal of Sorokina's contract, the parties do not dispute that Sorokina established a prima facie case of gender discrimination or that the College articulated legitimate, non-discriminatory reasons for its action. And Sorokina has carried her burden to withstand summary judgment at the third step of the *McDonnell Douglas* scheme.

At *McDonnell Douglas*'s step three, Sorokina points to the College's denial of her request for blended teaching for the Spring 2018 semester after she expected to give birth to a child.[9] A reasonable jury could find the College's explanations for that denial lack credibility.

Keep claimed that as a "traditional face to face institution," the College did not wish to establish a precedent for the teaching of blended classes during academic semesters. App. 290. Yet the College permitted two male professors to teach fully online when those professors wished to spend academic semesters abroad. Moreover, Keep reasoned that teaching a blended course while pregnant "could have posed a

---

[9] Although this conduct occurred outside the statute of limitations, it can still serve "as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

13

problem," and that if Sorokina "had the baby while teaching an online course no one else would be able to take the course." ECF No. 121-7 at 2. But Sorokina's request concerned a timeframe after she would have given birth, not while she was pregnant. And even assuming Keep's concerns were valid, they would apply equally to non-blended teaching. *See Blunt*, 767 F.3d at 265.

During Sorokina's third-year-review process, the PRC stated that the Department's change to Sorokina's schedule in Spring 2018 (when she requested to teach blended courses after giving birth to a child) "in effect, provided her with an additional seven weeks of paid maternity leave." App. 339. Soon thereafter, the PRC faulted Sorokina for "fail[ing]" to "pull [her] own weight." *Id.* A reasonable jury could find that this PRC report injected discriminatory bias into the review process when it addressed her request for a childbirth-related schedule change alongside her capacity to support the department.

Additionally, Patrick made a comment about Sorokina's appearance during her interview process and otherwise treated female faculty members differently from male faculty members. A reasonable jury could find this evidenced gender bias by Patrick—one of the two professors who signed the PRC's report. Moreover, Patrick and Mayo wrote the PRC report without meaningful collaboration or discussion with the sole woman on the PRC, deviating from the College's regular process. *See Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 433–34 (3d Cir. 1997) (concluding that procedural and substantive inconsistencies by a PRC was evidence upon which a jury could find a "tenure denial was a product of discrimination"); *cf. Kairys v. S. Pines*

14

*Trucking, Inc.*, 75 F.4th 153, 164 (3d Cir. 2023) (affirming pretext concerning an ERISA discrimination claim when, among other things, "circumstances surrounding [a termination] were unusual").

This evidence of gender discrimination, along with disputes about some bases for the PRC's recommendation (e.g., late and cancelled classes), could cause a reasonable jury to disbelieve the PRC's explanations for its recommendation. *See Fuentes*, 32 F.3d at 764 n.7 (3d Cir. 1994) (explaining that "[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, . . . a factfinder may rationally disbelieve the remaining proffered reasons"); *Tomasso v. Boeing Co.*, 445 F.3d 702, 707, 709 (3d Cir. 2006) (same, and explaining that "[e]ven if a rational factfinder would have to conclude that [an employer's] rationales played *some* role in [an employee's termination], the factfinder would not have to conclude that they provide a *sufficient* explanation"). A reasonable jury could also find that the discriminatory bias infecting the PRC's recommendation influenced the higher levels of review—i.e., that bias "bore a direct and substantial relation" to the College's non-renewal of Sorokina's contract. *McKenna v. City of Philadelphia*, 649 F.3d 171, 179 (3d Cir. 2011) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 419–20 (2011)); *see also Delli Santi v. CNA Ins. Companies*, 88 F.3d 192, 200 (3d Cir. 1996) (collecting pre-*Staub* cases).[10]

---

[10] The College argues that Sorokina forfeited her theory of "cat's paw" liability by not asserting it before the District Court. Although forfeiture is a close call on this record, we

15

"[T]aken as a whole and viewed in a light favorable" to Sorokina's case, there is a "convincing mosaic of circumstantial evidence" upon which a reasonable jury could conclude that discriminatory bias more likely than not motivated or determined the College's decision to not renew Sorokina's contract. *Canada*, 49 F.4th at 349 (cleaned up). Therefore, we will reverse the District Court's order granting summary judgment to the College on Sorokina's gender-discrimination claim concerning this non-renewal.

### III

Sorokina's retaliation claim also withstands summary judgment. Sorokina engaged in protected activity when she reported discrimination to the College in December 2018 and had follow-up communications with a College EEO Officer. Those follow-up communications include Sorokina's March 2019 email detailing her allegations of discrimination and saying that she would soon file a formal charge of discrimination with the EEOC. Just three weeks after Sorokina sent that email, the PRC recommended that the College not renew Sorokina's contract. And Patrick—one of the two PRC members who signed the recommendation—admitted that he knew Sorokina had made a discrimination complaint.

The PRC's adverse recommendation satisfies the prima facie requirement of an adverse employment action. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196

---

conclude that Sorokina argued scantly enough to preserve this theory for appellate review. *See, e.g.*, App. 186, 205 (arguing that Patrick engaged in gender discrimination before and during his time on the PRC); App. 210 (arguing that the PRC's review was the basis for the College's non-renewal of Sorokina's contract); App. 217–20 (addressing the higher-level reviewers' reliance on the PRC's report).

(3d Cir. 2015) (determining that a disciplinary warning constituted an adverse action because it "could have dissuaded a reasonable person in [the employee's] position from charging discrimination"). And the temporal proximity between Sorokina's protected conduct and the PRC's adverse recommendation supports an inference of causation. *Qin*, 100 F.4th at 477–78 (holding that six weeks of proximity between the plaintiff's complaint and an adverse employment action is "unusually suggestive of retaliatory motive" and enough for a jury to infer causation (citation omitted)); *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 325 (3d Cir. 2014) ("Given the unusual nature of [plaintiff's] termination and its proximity to [her FMLA] leave, a jury could reasonably conclude that [plaintiff's] request for FMLA leave motivated this differential treatment.").

The College's decision not to renew Sorokina's contract also was an adverse employment action. *See Daniels*, 776 F.3d at 195–96. And just as a jury could find that the discriminatory bias infecting the PRC's recommendation was a proximate cause of the non-renewal, it could find that retaliatory animus driving the PRC's recommendation was a proximate cause of the non-renewal. *See Crosbie v. Highmark Inc.*, 47 F.4th 140, 146 (3d Cir. 2022) (explaining that a retaliation claim under the cat's-paw theory requires a decisionmaker to rely on a non-decisionmaker's communication that was motivated by a desire to retaliate). At the second and third steps of the *McDonnell Douglas* scheme, Sorokina's gender discrimination and retaliation claims proceed in tandem. As discussed above, Sorokina's circumstantial evidence—taken as a whole and viewed in a light favorable to her—creates triable issues that the College discriminated against her when it

declined to renew her contract. For the same reasons, that evidence creates triable issues that the College retaliated against her when the PRC recommended non-renewal of her contract and when the College declined to renew her contract.

## IV

The District Court (through a Magistrate Judge) limited Sorokina to obtaining certain document discovery from the College's Finance Department. On appeal, Sorokina makes a cursory argument that broader discovery would have been proper. She provides no basis for us to conclude that the order was an abuse of discretion. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010). Therefore, we will affirm the order.

\*   \*   \*

For the foregoing reasons, we will affirm the District Court's discovery order and we will affirm in part and reverse in part the District Court's order granting summary judgment in favor of the College. We will reverse the summary-judgment order insofar as it granted judgment for the College on Sorokina's gender discrimination and retaliation claims concerning the non-renewal of her employment contract.[11] In all other respects, we will affirm the summary-judgment order.

---

[11] Judge Phipps dissents from the partial reversal of the summary-judgment motion. In his view, the record demonstrates that the College had legitimate, nondiscriminatory reasons for not renewing Sorokina's contract. There was a spate of poor student reviews describing how Sorokina cancelled a substantial portion of her classes; sent them PowerPoints instead of rescheduling; was frequently late to class; did not grade

---

assignments in a timely manner; provided confusing and difficult-to-hear instructions; and was a generally ineffective professor. The volume of poor student reviews provides a legitimate, non-discriminatory reason for not renewing her contract, and Judge Phipps does not see a basis for concluding that that reason was pretextual, thus he does not believe that a reasonable jury could conclude that the College was motivated by discriminatory or retaliatory animus.